UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Lucas Putvain | |
| Plaintiff, | |
| v. | Civil Action No. 5:20–cv–125–gwc–kjd |
| James Baker, Benjamin Watts, Max Titus, Heidi Fox, Steven Fisher, Tina Bowen, Kimberly Gorton, Charles Remick | |
| Defendants. | |

## REPORT AND RECOMMENDATION
(Doc. 46)

Plaintiff Lucas Putvain, a prisoner proceeding *pro se*, brings this action under 42 U.S.C.

§ 1983 against the former Commissioner of the Vermont Department of Corrections (DOC)

Michael Touchette;[1] Benjamin Watts, DOC Director of Health Services; Max Titus, DOC

Assistant Director of Health Services; Heidi Fox, RN, DOC Director of Nursing Services; Steven

Fisher, Regional Director of Medicine; Tina Bowen, RN, of Centurion of Vermont; Kimberly

Gorton, DOC Program Technician; and Charles Remick, DOC Records Management Specialist

(Defendants).[2] (Doc. 22.) Putvain alleges that each Defendant was deliberately indifferent to his

serious medical needs related to injuries he sustained after a slip and fall at Northern State

---

[1] James Baker has succeeded Michael Touchette as DOC Commissioner since the filing of this action. The docket reflects that Touchette has been terminated from the case in both an official and individual capacity. To the extent that Putvain's Amended Complaint names former Commissioner Touchette in his official capacity, Commissioner Baker is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d).

[2] The Amended Complaint does not identify Defendants' positions within Vermont DOC or Northern State Correctional Facility. However, Putvain has attached exhibits to the Amended Complaint consisting of various grievances he filed with DOC officials, as well as responses from DOC officials. (Doc. 22 at 20–28, Exs. B1–B9). These documents identify Defendants by their positions. *See id.* at 23, 28.

Correctional Facility (NSCF) in Newport, Vermont. Putvain seeks compensatory and punitive damages against all Defendants in their individual capacities, and injunctive relief against all Defendants in their official capacities. (*Id.*)

Defendants have filed a Motion to Dismiss Putvain's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 46.) For the reasons explained below, I recommend that Defendants' Motion to Dismiss be GRANTED. I further recommend that, if the Court adopts this Report and Recommendation, the Court deny leave to amend the Amended Complaint.

### Background

### I.    Facts

The following facts are taken from Putvain's Amended Complaint, his incorporated Affidavit, and the attached exhibits, which consist of DOC grievance documents related to his claims of inadequate medical care. Putvain was incarcerated at NSCF during the time period relevant to the Amended Complaint. (Doc. 22 at 3, ¶ 1.)[3] On March 30, 2019, Putvain slipped and fell on an "unmarked wet spot on the floor." (*Id.* ¶ 2.) After the fall, he suffered chronic back, head, and shoulder pain, decreased back and shoulder flexibility and range of motion, head trauma, and "impaired gross motor activity and skills." (*Id.*) On March 31, 2019, Putvain filed "VT DOC Grievance Form #1" raising concerns about "negligence/conditions of confinement."

---

[3] Putvain has included his own Affidavit in support of the Amended Complaint and attached the DOC grievance documents he relies upon in the Amended Complaint. (Doc. 22 at 3–28.) "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 130, 134 (2d Cir. 2006). Because the Amended Complaint contains only Putvain's "Prayer for Relief," the Court has considered the Affidavit and the grievance documents in its assessment of the adequacy of the Amended Complaint under Rule 12(b)(6).

(*Id.* at 4, ¶ 3; *id.* at 20.)  The grievance requested that DOC "implement a plan" to clean up spills "ASAP."  (*Id.* at 20.)

On April 8, 2019, Putvain filed "VT DOC Grievance Form #2."  (*Id.* at 4, ¶ 4; *id.* at 21.) In the grievance, Putvain noted that he was "seen by medical . . . several days" after the fall.  (*Id.* at 21.)[4]  According to his grievance, Putvain was not satisfied with the medical attention that he received.  Nevertheless, he noted the assessment of "medical" at that time: "[Doctor] said possible torn ACL in rotator cuff . . . . They are ordering X-rays but not for days[,] which should be immediate!"  (*Id.*)

Putvain met with "an NSCF medical provider" on April 9, 2019.  (*Id.* at 4, ¶ 5.)  According to Putvain, the provider "only cursorily addressed two items of concern," after which the provider determined there was "no evidence of a rotator cuff injury" and "the pain was improving."  (*Id.*) Although Putvain reported all the symptoms listed above, the medical provider "failed to address any of the other serious medical conditions which [he] reported."  (*Id.*)

On May 15, 2019, Putvain filed "VT DOC Grievance Form #5"—an appeal of the April 8, 2019 grievance—to the Facilities and Field Services Executives.  (*Id.* at 4–5, ¶ 6; *id.* at 22.)  In the appeal, Putvain complained that he still had not received a response to the April 8, 2019 grievance, or "relief or help of any kind."  (*Id.* at 22.)  He noted that he had "not gotten better," and "[his] pain remain[ed] [and] [at] times worsen[ed]."  (*Id.*)  He claimed that he had "still seen no [doctor] or Physical Therap[ist] [and] have gotten no X-ray/MRI."  (*Id.*)

On or about May 29, 2019, Putvain met with a second NSCF medical provider, who he alleges also "only cursorily addressed two items of concern."  (*Id.* at 5, ¶ 7.)  The provider

---

    [4] There appears to be an inconsistency between the allegations in Putvain's April 8, 2019 grievance and the Amended Complaint.  Whereas the grievance indicates that he received medical attention within "several days" of his injury, the Amended Complaint alleges that he filed the April 8, 2019 grievance "[s]till not having been seen by an NSCF medical provider."  (Doc. 22 at 4, ¶ 4.)

concluded that Putvain's "pain was improving" and that he had "full range of motion and full

flexion with no evidence of significant injury or labral or rotator cuff injury." (*Id.*) Putvain "was

referred to physical therapy and prescribed ibuprofen," but he contends that the provider failed to

address his other allegedly serious medical conditions. (*Id.*)

On June 18, 2019, DOC Program Technician Kimberly Gorton informed Putvain that the

DOC required "an extension of 20 business days . . . to gather pertinent information on [Putvain's]

appeal." (*Id.* at 23.) Gorton copied her reply to Defendants Benjamin Watts; Max Titus; Heidi

Fox; and Tina Bowen of Centurion of Vermont. (*Id.*) Putvain alleges that Gorton and the copied

Defendants "have failed to provide [him] with any response to [his May 15, 2019] submission."

(*Id.* at 5–6, ¶ 8.)

Putvain received a shoulder X-ray on or about July 18, 2019. (*Id.* at 6, ¶ 9.) He did not

receive an MRI, which he alleges "caused [his] serious medical conditions to go untreated and

worsen." (*Id.*) The same day, Putvain filed another grievance seeking "outside care" for his

shoulder injury. (*Id.* at 24.) He noted that he had received an X-ray but requested an MRI on his

shoulder. (*Id.*) On July 30, 2019, Putvain appealed the July 18, 2019 grievance to the Director of

Health Services, noting in the grievance that a prison medical provider had informed Putvain that

he was "most likely suffering from a 'torn ACL.'" (*Id.* at 25.) Putvain further noted that he

"asked to receive a[n] MRI." (*Id.*) He also stated that he was "scared that waiting to address this

injury will make it worse." (*Id.*)

Director Watts denied Putvain's appeal on September 9, 2019:

Mr[.] Putvain, pertinent medical records have been reviewed to consider your
grievance regarding medical care. On May 29, 2019[,] you met with the provider to
discuss your complaint of right shoulder pain. During that visit[,] you were found to
have full range of motion and full flexion. The provider discussed with you that there
is no evidence of significant injury, [and] you were referred to physical therapy and
prescribed ibuprofen to help with discomfort and any residual swelling that might be

4

present.  Please continue to work with the medical team in the facility if you have on-going concerns.  This grievance is resolved.[5]

(*Id.* at 26.)  Putvain appealed to the DOC Commissioner.  (*Id.* at 27.)  He noted in his appeal that

the facility doctor did not "refer [him] to an outside specialist to get a[n] MRI like he should

[have]."  (*Id.*)

The Commissioner issued a written denial of Putvain's grievance on October 16, 2019.

(*Id.* at 28.)  The Commissioner's response summarized the findings of prison medical providers:

> I have received your Decision Appeal (#129872) regarding medical care following a slip and fall you claim occurred on March 30, 2019.  Our Director of Nursing reviewed pertinent medical records and determined that on April 9, 2019 you met with one of the facility medical providers regarding your right shoulder pain.  At that time the medical provider noted your pain was improving and found no evidence of a rotator cuff injury.  The provider advised you to modify your exercise routine until your pain subsided.  On May 29, 2019, you met with another provider for the same concern, who noted that your right shoulder pain was improving and, again, there was no evidence of labral or rotator cuff injury.

(*Id.*)  The Commissioner noted Putvain's concern that he "may have an ACL tear," but observed

that such a prognosis "would be related to a knee injury, not a shoulder injury."  (*Id.*)  Defendants

Gorton, Titus, Remick, and Fisher were copied on the Commissioner's denial.  (*Id.*)

## II.    Procedural History

Putvain filed his initial Complaint on September 3, 2020, against the State of Vermont,

Centurion of Vermont, and Defendants Watts, Titus, Fox, Fisher, Bowen, and Touchette.

(Doc. 5.)  In a February 10, 2021 Report and Recommendation, Magistrate Judge Conroy

recommended that the Court grant Defendants' Motion to Dismiss with leave for Putvain to file an

amended complaint.  (Doc. 19.)  Judge Conroy recommended dismissal of Putvain's claims for

---

[5]  Putvain alleges that Director Watts issued the September 9, 2019 denial of his grievance appeal.  (Doc. 22 at 6–7, ¶ 11.)  The denial document itself does not identify Watts as the responding official.  (*Id.* at 26, Ex. B7.)  However, it appears that the denial corresponds to Putvain's July 30, 2019 appeal to the Director of Health Services, identified in Putvain's attached exhibits as Benjamin Watts.  (*Id.* at 7, ¶ 11; *id.* at 25, 26, Exs. B6, B7.)

monetary damages against the State of Vermont and Defendants Touchette, Titus, and Fox in their official capacities on Eleventh Amendment grounds. (*Id.* at 9.) Judge Conroy further recommended dismissing Putvain's claims against Touchette, Titus, Fox in their individual capacities because he failed to allege their personal involvement in the alleged unconstitutional conduct. (*Id.* at 14.) Finally, Judge Conroy recommended that Putvain's deliberate-indifference claim under the Eighth Amendment be dismissed because the complaint failed to allege facts sufficient to meet the subjective prong of the Eighth Amendment deliberate-indifference standard. (*Id.* at 20.)

On March 17, 2021, Chief Judge Crawford adopted the Report and Recommendation, dismissed Putvain's Complaint, and permitted Putvain to file an amended complaint. (Doc. 25.) Prior to the adoption of the Report and Recommendation, however, Putvain filed an Amended Complaint on February 25, 2021. (Doc. 22.) The Amended Complaint no longer includes the State of Vermont and Centurion as defendants, and adds Gorton and Remick as Defendants, but otherwise includes the same Defendants that the original Complaint included. (*See id.*) Putvain alleges that Defendants were personally involved in the deprivation of his constitutional rights because they had knowledge of his written grievances about the medical treatment he was receiving for his injury, and allegedly failed to respond. (*Id.* at 5–6, ¶ 8; *id.* at 6–7, ¶¶ 11, 12.)

Putvain has not responded to Defendants' Motion to Dismiss.

## Discussion

### I.    Standard of Review

In determining whether a complaint states a claim, the Court must "accept as true all of the allegations" and determine whether the claim is "plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6]  A

claim is facially plausible only when the facts in the complaint support a "reasonable inference"

that the defendant is liable for the purported misconduct.  *Id.*  These factual allegations need not be

detailed.  *Twombly*, 550 U.S. at 555. They must, however, present "more than a sheer possibility

that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Although the Court must afford

"special solicitude" to the allegations of a *pro se* plaintiff, the complaint nevertheless must satisfy

*Iqbal*'s plausibility standard.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).  Finally, "the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

to legal conclusions."  *Iqbal*, 556 U.S. at 678.

## II.    Putvain has not stated an Eighth Amendment claim against Defendants under 42 U.S.C. § 1983.

Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under

color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'"

*Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration and omissions in original) (quoting 42 U.S.C.

§ 1983).  "Section 1983 is not itself a source of substantive rights, but merely provides a method

for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive

individuals of their federally guaranteed rights and to provide relief to victims if such deterrence

fails."  *Wyatt*, 504 U.S. at 161.  In order to state a claim under § 1983, a plaintiff must: (1) "allege

the violation of a right secured by the Constitution and laws of the United States," and (2) show

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

that "the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Putvain asserts that Defendants' deliberate indifference to his serious medical needs deprived him of his right under the Eighth Amendment to be free from cruel and unusual punishment in the prison setting. As explained below, I recommend that Putvain's § 1983 claim be dismissed because he has failed to adequately allege that Defendants were personally involved in the alleged deprivation of his constitutional rights or that Defendants were deliberately indifferent to his serious medical needs.

### A.    Putvain has not adequately alleged that any of the Defendants were personally involved in the deprivation of his constitutional rights.

Putvain alleges that Defendants were "personally involved in the deliberate indifference to [his] serious medical conditions" because they received copies of his grievances and allegedly either did not respond (Doc. 22 at 5–6, ¶ 8), or were delayed in responding. (*Id.* at 6–7, ¶¶ 11–12).[7] In his view, therefore, Defendants are responsible for "harmful acts or omissions that denied or unreasonably delayed [his] access to . . . medical care." (*Id.* at 8, ¶ 13.)

Defendants respond that Putvain has not established a "tangible connection" between his injury and Defendants Watts, Remick, Gorton, Titus, Fox, and Baker's acts.[8] *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Defendants note that Putvain has not alleged that "[these Defendants] were personally involved in decisions about his medical care." (Doc. 46 at 5.)

---

[7] On March 17, 2021, the Court granted Defendants' previous Motion to Dismiss the claims against Defendants in both their official and individual capacities. A docket entry on the same date notes the termination of former DOC Commissioner Michael Touchette in both his official and individual capacities. In his Amended Complaint, Putvain sued Touchette in his individual capacity. However, the docket lists DOC Commissioner Baker as a defendant in both his official and individual capacities. This Report and Recommendation refers to Baker in its analysis of the sufficiency of Putvain's individual-capacity claims in Section II.A.

[8] Defendants do not address whether Putvain has adequately alleged that Bowen and Fisher were personally involved in the claimed Eighth Amendment violations. (*See* Doc. 46 at 5, 7.) As discussed below, Putvain fails to adequately allege their personal involvement in the alleged deprivation of Eighth Amendment rights.

8

1.    **Putvain cannot allege that Defendants were personally involved in the alleged constitutional violations simply because they had supervisory roles within the DOC.**

Although not explicitly alleged, to the extent that the Amended Complaint alleges that any Defendant is liable under a theory of supervisor liability, these claims fail.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  Given that supervisor liability in a § 1983 action cannot rest merely on a theory of respondeat superior, a plaintiff must allege some level of personal responsibility for the constitutional injury by Defendants.  *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *see also Tangreti v. Bachmann*, 983 F.3d 609, 617 (2d Cir. 2020) ("[A] 'conception of "supervisory liability"'—according to which a supervisor may be held liable based on a lesser showing of culpability than the constitutional violation requires—is 'inconsistent' with the principle that officials 'may not be held accountable for the misdeeds of their agents.'" (quoting *Iqbal*, 556 U.S. at 677)).  Mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections in a § 1983 claim.  *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright*, 21 F.3d at 501 (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

A supervisor may be held liable for unconstitutional conduct in limited circumstances:

The liability of a supervisor under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez*, 341 F.3d at 145 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  But *Iqbal* "cast doubt on the continued viability of the[se] special standards for supervisory liability." *Tangreti*, 983 F.3d at 617.  As the Second Circuit recently explained, when claiming a supervisor is liable, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 618.  While "the factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue," "the violation must be established against the supervisory official directly." *Id.*; *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Applying these principles here, for Putvain to state a claim under the Eighth Amendment that Defendants failed to prevent medical harm to him, he "must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to [his] current or future health, and (b) that the defendant[s] acted with 'deliberate indifference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  As explained below, deliberate indifference in this context means the official "must 'know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).  Therefore, Putvain must allege that the individual Defendants violated his Eighth Amendment rights "by [their] own conduct, not by reason of [their] supervision of others who committed the violation." *Tangreti*, 983 F.3d at 619. In other words, Putvain must show that Defendants *themselves* "acted with deliberate indifference—meaning that [they] personally knew of and disregarded an excessive risk to [Plaintiff's] health or safety." *Id.*  Putvain has failed to allege facts that meet this standard.

10

2.    **Putvain has not alleged that Defendants were personally involved in his allegedly inadequate medical care.**

To allege personal involvement in the deprivation of a plaintiff's constitutional rights, a plaintiff must allege facts showing a "tangible connection between the acts of [each] defendant and the injuries suffered." *Bass*, 790 F.2d at 263. In the context of inmate correspondence, "[t]he district courts of this circuit appear to be in unanimous agreement that a supervisory official having received (and ignored) a letter from an inmate alleging unconstitutional conduct does not, without more, give rise to personal involvement on the part of that official." *Thompson v. Pallito*, 949 F. Supp. 2d 558, 575 (D. Vt. 2013); *see also Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009). For those officials who review and deny a grievance, "a response to the effect that [plaintiff] had provided insufficient information to support his allegations" alone would "prove only the scantest awareness of [plaintiff's] claims" and similarly falls short of proving personal involvement. *Mateo v. Fischer*, 682 F. Supp. 2d 423, 431 (S.D.N.Y. 2010).

In assessing whether a complaint sufficiently alleges a prison official's awareness of excessive risk to a prisoner's medical condition, courts may consider the official's knowledge or expertise. "One can imagine the repercussions if non-medical prison officials were to attempt to dictate the specific medical treatment to be given to particular prisoners—for whatever reason." *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000); *accord Dumont v. Corr. Corp. of Am.*, Civil Action No. 2:14-cv-209-cr-jmc, 2016 WL 8193639, at *8 (D. Vt. Nov. 21, 2016), *report and recommendation adopted*, 2017 WL 456463 (Feb. 2, 2017). "[A] prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been 'personally involved' if he does so." *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002); *see also Sharma v. D'Silva*, 157 F. Supp. 3d 293, 305 (S.D.N.Y. 2016), *abrogated on other grounds by Darnell v.*

*Pineiro*, 849 F.3d 17 (2d Cir. 2017) (holding non-medical officials were not deliberately indifferent to inadequate medical care when they "responded to Plaintiff's letters" and "acted in an appropriate manner by deferring to the judgment of medical staff").

Putvain has failed to adequately plead that Defendants were personally involved in the alleged constitutional violation. Although Putvain claims that several unidentified medical providers' decisions caused his conditions to "go untreated and worsen" (Doc. 22 at 4, ¶ 5; *id.* at 5, ¶ 7), he has not alleged that any Defendant actively participated in these providers' medical decisions. For example, Putvain does not allege that Defendants Gorton, Watts, Titus, Fox, and Bowen participated in the clinical decision to order an X-ray for his shoulder, nor does he allege that Defendants Baker, Gorton, Remick, Titus, or Fisher had any role in the decision not to order an MRI, even if he requested one in his appeal. (*Id.* at 22, 25); *see also Joyner*, 195 F. Supp. 2d at 506 ("Plaintiff has not alleged any facts against Superintendent Greiner to show that he unconstitutionally interfered with or denied plaintiff any form of medical treatment."). Putvain therefore has not established a tangible connection between any named Defendant and the medical care he received. *Bass*, 790 F.2d at 263.

Even assuming that each Defendant received Putvain's grievances, as he alleges, simple receipt of a grievance is insufficient to allege personal involvement in an alleged constitutional deprivation under § 1983. Putvain alleges Defendant Gorton replied to Putvain's grievance indicating that the DOC required time "to gather pertinent information" for his appeal, but claims Gorton (and Watts, Titus, Fox and Bowen, who were all copied on the appeal) have since "failed to provide [him] with any response" to that grievance. (*Id.* at 5, ¶ 8.) However, the fact that these Defendants allegedly "received (and ignored) a letter from an inmate alleging unconstitutional conduct does not, without more, give rise to personal involvement" in the inmate's allegedly inadequate care. *See Thompson*, 949 F. Supp. 2d at 575. Although Putvain's grievances alleged

12

that he received improper medical care, the only allegations connecting Defendants Gorton, Watts,

Titus, Fox, and Bowen to that care appear to be that these Defendants allegedly failed to reply to

one of his grievances.  Even assuming that were true, such allegations alone are insufficient to

show their personal involvement.  *Joyner*, 195 F. Supp. 2d at 507 ("Inaction following receipt of

letters from a prisoner regarding alleged violations does not automatically render an official

personally liable under Section 1983.").

Similarly, Defendants' involvement in the grievance process—either as the author of an

item of correspondence to Putvain or as an official copied on correspondence—is inadequate to

allege the requisite personal involvement to sustain a § 1983 claim.  Defendant Gorton's letter to

Putvain stated only that the DOC required additional time "to gather pertinent information" for his

appeal.  (Doc. 22 at 23.)  Gorton's response served a purely administrative purpose.  Indeed,

Gorton signed the letter as a "Program Technician," not as a member of medical staff.  (*Id.*)  The

fact that Defendants Watts, Titus, Fox, and Bowen were copied on this administrative response is

insufficient to allege their personal involvement.  Therefore, Putvain has not stated a § 1983 claim

against Defendant Gorton in her individual capacity.

Defendants Watts and Baker's denials of Putvain's grievances also do not establish their

personal involvement in the alleged constitutional violation.  Watts's September 9, 2019 denial of

Putvain's grievance appeal, and the Commissioner's October 16, 2019 denial, stated that the

"pertinent medical records" were considered to assess the claim of allegedly inadequate medical

care.  Their letters to Putvain described his provider's findings after examination and noted that

these providers found "no evidence" of significant injury.  (*Id.* at 26, 28.)  Defendants Watts and

Baker referenced the providers' assessment of Putvain's medical condition and the providers'

recommended course of treatment.  Putvain does not allege that Commissioner Baker or Director

Watts has any expertise upon which either Defendant could rely when reviewing Putvain's

medical care. *See Cuoco*, 222 F.3d at 111 (holding that "[t]here is no evidence that [either the warden or the Health Services Administrator], neither one a medical doctor, had the authority to intervene in an admittedly medical decision"). Corrections officials may rely on "opinions of medical personnel concerning the proper course of treatment . . . , and cannot be held to have been 'personally involved' if [they] do[ ] so." *Joyner*, 195 F. Supp. 2d at 506. Putvain fails to state a § 1983 claim against Defendants Watts and Baker in their individual capacities because he has not alleged their personal involvement in the allegedly inadequate care. Similarly, to the extent Putvain alleges that Defendants Gorton, Remick, Titus, Fisher, Bowen and Fox were personally involved because they were copied on the grievance responses, this claim also fails.

A § 1983 claim that fails to allege the personal involvement of the defendant fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010). I therefore recommend that Defendants' Motion to Dismiss be GRANTED as to all Defendants.

**B.    Putvain has not stated a claim under the Eighth Amendment that Defendants were deliberately indifferent to his serious medical needs.**

Even assuming that Putvain adequately alleged Defendants' personal involvement under § 1983, the Amended Complaint fails to state a claim of deliberate indifference under the Eighth Amendment. Putvain asserts that the allegedly inadequate responses to his grievances "caused [his] serious medical conditions to go untreated and worsen." (Doc. 22 at 5–7, ¶¶ 8, 11, 12.) He claims "Defendants were subjectively aware of a substantial risk that [he] would suffer serious harm as a result of their acts or omissions," and their "failure to treat [his] serious medical conditions resulted in 'further significant injury or the unnecessary and wanton infliction of pain.'" *Id.* at 8, ¶ 13 (quoting *Harrison v. Barkley*, 219 F. 3d 132, 136 (2d Cir. 2000). Defendants reply that Putvain's factual allegations are insufficient to state a deliberate-indifference claim. (Doc. 46 at 7–9.)

14

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const. amend. VIII. In the prison context, the Amendment protects against deliberate indifference to a prisoner's serious medical needs by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner's serious medical needs include his or her "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). To demonstrate deliberate indifference to a prisoner's medical needs, the prisoner must allege harmful acts or omissions that deny or unreasonably delay his or her access to needed medical care or wantonly cause infliction of unnecessary pain. *Estelle*, 429 U.S. at 104–06. Clearly, not all failures by prison staff to provide medical care rise to the level of a constitutional violation. *Id.*; *see also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). A prisoner must demonstrate "more than an inadvertent failure to provide adequate medical care by prison officials" in order to successfully establish Eighth Amendment liability. *Id.*

The deliberate-indifference standard consists of two prongs: (1) the alleged deprivation must have objectively posed an unreasonable risk of serious harm to the prisoner's current or future health; and (2) the defendant must have been subjectively aware of a substantial risk that the prisoner would suffer serious harm as a result of the defendant's acts or omissions. *Tangreti*, 983 F.3d at 619; *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Regarding the objective prong, a "serious harm" exists where, objectively, "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison*, 219 F. 3d at 136. "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently

grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Under the subjective standard, while the plaintiff need not show that the official intended for him to suffer harm through this omission, the official's actions "must have been more than merely negligent." *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280. "[A] delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady," without more, does not state a deliberate-indifference claim. *Harrison*, 219 F.3d at 139. A supervisor without medical training giving "automatic and complete deference" to such medical staff decisions also "is not, by itself, sufficient evidence that [the supervisor] was deliberately indifferent to [the plaintiff's] serious medical needs." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).

"[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citing *Estelle*, 429 U.S. at 105–06). Similarly, "mere disagreement over [a prisoner's] proper treatment does not create a constitutional claim[, and] [s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *see also Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), [or] forms of treatment, . . . are not adequate grounds for a Section 1983 claim[, as] [t]hese issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not

16

the Eighth Amendment." (citing *Estelle*, 429 U.S. at 107)); *Morales v. Fischer*, 46 F. Supp. 3d 239, 253 (W.D.N.Y. 2014) ("Even if a liver biopsy or further testing was justified, (and the Court makes no finding in that regard), Defendants' decision not to conduct such testing does not give rise to an Eighth Amendment violation.  Plaintiff's disagreement or dissatisfaction with his treatment is not enough.").  "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking."  *Hill*, 657 F.3d at 123.

Putvain alleges a wide range of persistent physical and emotional impairments resulting from his injury.  (Doc. 22 at 3, ¶ 2.)  Defendants contend that Putvain's allegations fail to satisfy the objective prong of the deliberate-indifference standard.  (Doc. 46 at 8.)  They rely on the treatment notes referenced in Exhibits B7 and B9, in which providers determined that Putvain did not have a significant injury.

Even assuming Putvain has adequately pleaded facts under the objective prong of the deliberate-indifference analysis, however, he has not alleged sufficient facts to allege a claim under the subjective prong.  The Amended Complaint contains no allegation that Putvain's treatment providers exhibited recklessness, i.e., they consciously disregarded a substantial risk that serious harm would result to Putvain.[9]  Putvain has not alleged that any Defendant participated in his medical care; he alleges merely that Defendants received copies of his grievance forms. Notwithstanding Putvain's claim of Defendants' indifference to his medical situation, the allegations in his Amended Complaint suggest otherwise.  According to the allegations in the Amended Complaint, Putvain met with a provider within days of his reported injury on March 30, 2019.  (Doc. 22 at 21.)  On April 9, 2019, he met with a provider, who noted no evidence of rotator cuff injury and improvement of pain symptoms.  (*Id*. at 4, ¶ 5.)  He met with a second

---

[9]  Putvain has not identified the providers or named them as defendants in his Amended Complaint.

provider in May 2019, who also noted improved pain and "no evidence of significant injury." (*Id*. at 5, ¶ 7.)  He was prescribed ibuprofen and referred to physical therapy.  (*Id*.)  Putvain received an X-ray in July 2019.  (*Id*. at 6, ¶ 9.)  When denying his appeals, both Defendants Watts and Baker cite these visits with medical providers and the resulting treatment regimen that was prescribed.  (*See id*. at 26, 28.)  These facts are insufficient to allege that Defendants were aware of a substantial risk to Putvain's serious medical needs and failed to act.  Rather, the alleged facts suggest that Putvain received medical attention and treatment for his condition.

Putvain also alleges that, during both visits with medical providers, they "only cursorily addressed two items of concern" and "failed to address any of the other serious medical conditions which [Putvain] reported."  (Doc. 22 at 4, ¶ 5; *id*. at 5, ¶ 7.)  However, none of Putvain's grievances appear to note these alleged failures.  Even assuming the truth of these allegations, such a claim of negligence does not rise to the level of a constitutional injury.  *Chance*, 143 F.3d at 703.

Finally, Putvain alleges that while he did receive an X-ray of his shoulder, an MRI was the more appropriate diagnostic tool for his condition.  (*Id*. at 6, ¶ 9.)  He contends that the failure to refer him for an MRI caused his serious medical condition to deteriorate further.  (*Id*.)  However, "mere disagreement over [his] proper treatment," if otherwise adequate, does not give rise to a constitutional claim.  *See Chance*, 143 F.3d at 703; *see also Sonds*, 151 F. Supp. 2d at 312; *Joyner*, 195 F. Supp 2d at 504 ("The fact that plaintiff wanted an MRI done does not mean that the doctor who refused to order one was deliberately indifferent to his medical needs.  Plaintiff alleges nothing more than a mere disagreement over the kind of treatment that he was given[,] which does not constitute a constitutional violation.").

In summary, according to the allegations of the Amended Complaint and the attached exhibits, Putvain received medical examinations on two occasions, prescriptions for physical

therapy and ibuprofen, and an X-ray on his shoulder. According to the grievance documents, Defendants reviewed his concerns in light of the medical treatment record to conclude that he was receiving appropriate treatment from his providers. Putvain has not adequately alleged that Defendants were subjectively aware of a substantial risk of serious harm to Putvain and failed to act.

Putvain has failed to state a claim against Defendants for an Eighth Amendment violation for deliberate indifference to his serious medical needs. Therefore, I recommend that Putvain's Amended Complaint be dismissed in its entirety.

**III.    State-Law Claims**

In addition to a § 1983 claim, Putvain may also be alleging a state-law medical-practice claim. Given my recommendation that the Court dismiss the federal claim against Defendants, I also recommend that the Court refrain from exercising supplemental jurisdiction over any pending state-law claims. In cases over which a district court has original jurisdiction, it shall also have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the court may decline to exercise supplemental jurisdiction over state-law claims, if the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). If the plaintiff "has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because I recommend

dismissing Putvain's federal claims, I further recommend that the Court decline to exercise supplemental jurisdiction over any potential state-law claim against Defendants.

## IV.    Leave to Amend

The Second Circuit has emphasized that a district court should not dismiss a *pro se* filing "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco*, 222 F.3d at 112; *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once . . . ."). A *pro se* plaintiff should ordinarily be given the opportunity to amend if the complaint contains "any indication that a valid claim might be stated." *Shomo*, 579 F.3d at 183.

However, "[l]eave to amend may properly be denied if the amendment would be futile." *Grullon*, 720 F.3d at 140. An amendment is futile when the deficiencies in the plaintiff's complaint are "substantive" and "better pleading will not cure it." *Cuoco*, 222 F.3d at 112; *Preterotti v. Souliere*, Civil Action No. 2:16-cv-72-wks-jmc, 2016 WL 7971319, at *10 (D. Vt. Dec. 28, 2016), *report and recommendation adopted sub nom. Preterotti v. Douliere*, Civil No. 2:16-CV-72, 2017 WL 318798 (D. Vt. Jan. 23, 2017).

In this case, the Court's previous Report and Recommendation set forth the relevant legal standards to allege an Eighth Amendment deliberate-indifference claim, including the requirement that the named defendants be personally involved in the alleged constitutional violations. The Amended Complaint asserts the same essential facts and requests for relief. Both the original Complaint and the Amended Complaint allege constitutionally inadequate medical treatment; specifically, Defendants' failure to provide an MRI scan and inadequate attention to his reported conditions. (*See* Doc. 22 at 3, 17.)

As the previous Report and Recommendation noted on the same essential facts, Putvain has failed to allege that he received inadequate medical care under the Eighth Amendment—he has not alleged how Defendants recklessly disregarded his serious medical needs.  At most, he alleges a claim of negligence which, as discussed, does not give rise to a constitutional claim for inadequate treatment.  *See Sonds*, 151 F. Supp. 2d at 312.  Therefore, even if Putvain asserted the same allegations against the medical providers who made the decisions regarding his treatment (rather than against the Defendants who merely received his grievances regarding that care), he would not state a valid Eighth Amendment claim.  *See Coleman v. BrokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (summary order) (affirming dismissal of *pro se* plaintiff's complaint without leave to amend when the court already afforded the plaintiff "one opportunity to amend the complaint, and [he] made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend").  Because any further amendment would not cure the substantive deficiencies of Putvain's Amended Complaint, I recommend that the Court deny Putvain further leave to amend.

## Conclusion

For these reasons, I recommend that Defendants' Motion to Dismiss (Doc. 46) be GRANTED.  I further recommend that, if the Court adopts this Report and Recommendation, the Court deny leave to amend the Amended Complaint.

Dated at Burlington, in the District of Vermont, this 16th day of December 2021.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).